## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| JAMES LEBOUTHELLER, individually and on behalf of all others similarly situated, | Civil Action No.: 4:25-cv-01389 |
| *Plaintiff*, | **CLASS ACTION COMPLAINT** |
| v. | |
| TOYOTA MOTOR SALES U.S.A., INC., TOYOTA MOTOR NORTH AMERICA, INC., and TOYOTA MOTOR CORPORATION., | |
| *Defendants*. | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff James LeBoutheller ("Plaintiff"), by and through his attorneys of record, upon personal knowledge as to his own acts and experiences, and upon information and belief as to all other matters, which Plaintiff believes will be supplemented and supported after a reasonable opportunity for discovery, brings this class action complaint against Defendants Toyota Motor Sales U.S.A. Inc. ("TMS"), Toyota Motor North America, Inc. ("TMNA"), Toyota Motor Corporation ("TMC", together with TMC and TMS, collectively referred to as "Toyota" or "Defendants") as follows:

## INTRODUCTION

1.      Plaintiff brings this class action on behalf of himself and a class of current and former Toyota and Lexus vehicle owners and lessees of model years ("MY") 2017-present Toyota Highlander, MY 2019-present Toyota RAV-4, MY 2023-present Toyota Grand Highlander, MY 2017-2024 Toyota Camry, MY 2017-2020 Toyota Sienna, MY 2019-2022 Toyota Avalon, MY 2019-present Lexus ES350, MY 2021-present Lexus ES250, MY 2023-present Lexus RX350, MY

2022-present NX250, MY 2022-present NX350, and MY 2024-present Lexus TX350 (the "Class Vehicles" or "Vehicles").[1]

2.    This action arises from Defendants' failure, despite its longstanding knowledge of this material and manufacturing defect, to disclose to Plaintiff and other consumers that the Class Vehicles are predisposed to defects in their UA80 8-speed automatic transmissions and torque converters (collectively referred to as the "Transmission Assembly") and related software.

3.    The UA80 transmissions have been known to be an issue for several years, with several customer support program bulletins issued by Defendants. Despite knowing that the UA80 transmissions are defective, and possessing the knowledge that the Class Vehicles are unreliable and unsafe, Defendants continue to market and advertise that their vehicles and Transmission Assemblies are safe.

4.    The first defect at issue is that Defendants' Transmission Assembly has a design flaw that causes excess heat to build up inside the transmission, which then causes the transmission to burn transmission fluid, which causes premature wear and ultimately transmission failure (the "Mechanical Defect"). Such premature failures can also result in stalling events and other dangerous situations for Class Vehicle occupants and others on the road.

5.    The second defect at issue is that Defendant's software is defective as it causes premature upshifts and torque-converter clutch engagements that cause the Transmission Assembly to deteriorate faster than expected (the "Software Defect" and, collectively with the Mechanical Defect, the "Transmission Defect").

6.    Upon information and belief, not only did Defendants actively conceal the fact that the Class Vehicles' transmissions were defective (and require costly repairs to fix), they did not

---

[1] Plaintiffs reserve the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

reveal that the existence of the Transmission Defect would diminish the intrinsic and resale value of the Class Vehicles.

7.      Upon information and belief, Defendants have long been aware of the Transmission Defect. Despite its longstanding knowledge of this defect, Defendants have failed to adequately repair the Class Vehicles when the defect manifests.

8.      Many owners and lessees of Class Vehicles have communicated with Defendants and their agents to request that they remedy and/or address the Transmission Defect and resultant damage at no expense. Defendants have failed and/or refused to do so – often conveying to Vehicle owners and lessees that Class Vehicles are operating as intended and therefore cannot be repaired under warranty or otherwise.

9.      For customers whose Vehicles are within the Powertrain Limited Warranty period (which extends for the shorter of sixty months (five years) or 60,000 miles), Toyota has done nothing to address or correct the Transmission Defect when it manifests in the Class Vehicles.

10.     Despite notice and knowledge of the Transmission Defect from the numerous consumer complaints it has received, information received from Toyota dealerships, pre-sale durability testing, National Highway Traffic Safety Administration ("NHTSA") complaints, and its own internal records, Toyota has not recalled the Class Vehicles to repair the Transmission Defect, offered its customers a suitable repair or replacement free of charge, or offered to reimburse its customers who have incurred out-of-pocket expenses to repair the Transmission Defect.

11.     As a result of Toyota's unfair, deceptive and/or fraudulent business practices, owners and/or lessees of Class Vehicles, including Plaintiff, have suffered an ascertainable loss of

money and/or property and/or loss in value. The unfair and deceptive trade practices committed by Toyota were conducted in a manner giving rise to substantial aggravating circumstances.

12.     Had Plaintiff and other Class members known about the Transmission Defect at the time of purchase or lease, they would not have purchased or leased the Class Vehicles, or would have paid substantially less for the Class Vehicles.

13.     As a result of the Transmission Defect and the considerable monetary costs associated with attempting to repair such defect, Plaintiff and Class members have suffered injury in fact, incurred damages and have otherwise been harmed by Toyota's conduct.

14.     Accordingly, Plaintiff brings this action to redress Toyota's violations of the _Magnuson Moss Warranty Act and also to seek recovery for Toyota's breach of express warranty, breach of implied warranty, common law fraud, breach of the covenant of good faith and fair dealing and, alternatively, unjust enrichment.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Toyota transact business in this district. Additionally, Toyota has advertised in this district and has received substantial revenue and profits from its sales and/or leases of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims

occurred, in part, within this district. Finally, defendants TMNA and TMS are headquartered within this district in Plano, Texas.

17.     This Court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the districts of Texas and throughout the United States. In addition, defendants TMNA and TMS are headquartered within this district.

## PARTIES

### Plaintiff James LeBoutheller

18.     Plaintiff James LeBoutheller is a citizen of the State of Nevada and resides in Fernley.

19.     On or about November 2020, Plaintiff LeBoutheller purchased a new 2020 Toyota Camry XSE at Carson City Toyota, 2590 S. Carson Street, Carson City, Nevada, an authorized Toyota dealer and repair center. When he purchased the subject vehicle, Plaintiff LeBoutheller also purchased an extended warranty agreement.

20.     Plaintiff LeBoutheller purchased (and still owns) this vehicle, which is used for personal, family and/or household uses. His vehicle bears Vehicle Identification Number 4T1K61AKXLU923060.

21.     When his Toyota Camry had approximately 80,000 miles on the odometer, Plaintiff LeBoutheller began to notice significant noise from his vehicle's Transmission Assembly. Plaintiff LeBoutheller presented the vehicle for repair at Carson City Toyota and was informed that the vehicle and Transmission Assembly were functioning normally. Plaintiff LeBoutheller continued driving the vehicle.

22.    On or about November 2025, when the  his Toyota Camry had approximately 125,000 miles on the odometer, Plaintiff LeBoutheller again presented the vehicle to Toyota Carson City as the vehicle continued to present noise from the Transmission Assembly.

23.    After holding the vehicle for approximately 30 days, repair staff at Toyota Carson City indicated that no repair of the Transmission Assembly was necessary and that the vehicle was functioning properly.

24.    Thereafter, Plaintiff LeBoutheller presented his vehicle for repair at Fallon Ford-Toyota, an authorized Toyota dealership and repair center located in Fallon, Nevada. Repair center staff at Fallon Ford-Toyota informed Plaintiff LeBoutheller that aluminum particles had been detected in the transmission fluid of the Toyota Camry and indicated that the Transmission Assembly needed to be replaced. Plaintiff LeBoutheller was informed that Toyota would agree to provide a replacement Transmission Assembly, but would not pay for the cost of its installation, which would result in a charge of several thousand dollars to Plaintiff LeBoutheller. Toyota has refused to reimburse costs related to the installation of a replacement for the defective Transmission Assembly in his vehicle.

25.    Even should the Transmission Assembly in Plaintiff LeBoutheller's vehicle be replaced, all replacement Transmission Assemblies are subject to the same defects complained of herein and thus, Plaintiff LeBoutheller will still be subject to damages arising from the Transmission Defect.

26.    Plaintiff LeBoutheller has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Transmission Defect, including, but not limited to, the loss of use of his vehicle, the costs of future attempted repairs and diminished value of his vehicle.

27. Plaintiff LeBoutheller has driven his vehicle in a foreseeable manner and has not abused the vehicle nor has he used it for purposes unintended by Toyota.

28. Neither Defendants, nor their agents, agents, dealers or other representatives informed Plaintiff of the existence of the Transmission Defect prior to purchase. Had Defendants disclosed the Transmission Defect prior to Plaintiff's purchase, Plaintiff would not have purchased the vehicle, or would have paid substantially less for it.

## TOYOTA DEFENDANTS

29. Defendants are automobile and automobile component design, manufacturing, distribution, and/or servicing corporations doing business within the United States. Furthermore, Toyota designs, manufactures, distributes, markets, services, repairs, sells and leases passenger vehicles, including the Class Vehicles.

30. Defendant Toyota Motor North America, Inc. ("TMNA") is a California corporation with its principal place of business in Plano, Texas. TMNA serves as Toyota's North American headquarters and manages automobile design, research and development, engineering, regulatory compliance, and quality-assurance. TMNA exercises control over Toyota's product design, testing and warranty practices, including those related to the Transmission Defect.

31. Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is a California corporation with its principal place of business in Plano, Texas. TMS is responsible for the marketing, distribution, and sale of Toyota and Lexus vehicles in the United States. TMS is also responsible for the administration of consumer warranties, service bulletins, managing dealerships, and communicating with consumers and service centers in the United States.

32. Defendant Toyota Motor Corporation ("TMC") is a corporation organized under the laws of Japan with its principal place of business in Toyota City, Aichi Prefecture, Japan. TMC

is the parent corporation of TMNA and TMS. TMC designs, engineers, tests, and approves the transmission systems and Transmission Assemblies installed in Toyota and Lexus vehicles. TMC manages automobile design, manufacturing, sale, leasing, distribution, and servicing. TMC oversees and benefits from the sale of Toyota and Lexus vehicles, and directs its subsidiaries regarding product design, quality, and warranty decisions.

33.     Upon information and belief, Defendants, TMNA, TMS, and TMC act as a unified entity, and share operations with overlapping management. TMC directs Toyota's North American operations through its subsidiaries and agents, TMNA and TMS, for the sale of Toyota and Lexus vehicles.

34.     TMC purposefully directs and controls substantial business activities in the United States through TMNA and TMS, and controls virtually all aspects of the Toyota and Lexus vehicles it distributes in the United States.

35.     Upon information and belief, the design, manufacture, distribution, service, repair, modification, installation and decisions regarding the defective Transmission Assembly within the Class Vehicles were performed exclusively by Defendants.

36.     Upon information and belief, TMNA, TMS, and TMC develops the owner's manuals, warranty booklets and information included in maintenance recommendations and/or schedules for the Class Vehicles.

37.     Defendants TMNA, TMS, and TMC engage in continuous and substantial business in Texas, as well as the rest of the United States.

## **TOLLING OF STATUTES OF LIMITATIONS**

38.     Any applicable statute(s) of limitations has been tolled by Defendants' knowing and active concealment and denial of the facts as alleged herein. Plaintiff and members of the Class

could not have reasonably discovered the true, latent defective nature of the Transmission Defect until shortly before this class action litigation was commenced.

39.    Defendants have and remain under a continuing duty to disclose to Plaintiff and members of the Class the true character, quality and nature of the Class Vehicles and that it will require costly repairs and diminishes the resale value of the Class Vehicles. As a result of the active concealment by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

**FACTUAL ALLEGATIONS**

A.    **The Class Vehicles**

40.    The Toyota Camry was introduced in the United States in 1983. The eighth-generation Camry, the subject of this matter, utilized a UA80 eight-speed automatic transmission beginning in 2017. This defect exists in Toyota Camry's MY 2017 to 2024.

41.    The Toyota Highlander was introduced in the United States in 2001. Toyota first introduced the UA80 transmission in the model year 2017 with a model refresh in the middle of its third-generation.[2] This eight-speed automatic transmission replaced the previous six-speed unit. This defect exists in Toyota Highlanders MY 2017 to the present.

42.    The Toyota RAV-4 was introduced in the United States in 1996.  The fifth-generation RAV-4, the subject of this matter, utilized a UA80 eight-speed automatic transmission beginning in the 2019 model. This defect exists in Toyota Rav-4's MY 2019 to the present

43.    The Toyota Grand Highlander was introduced in the United States in 2023, equipped with a UA80 eight-speed automatic transmission. This defect exists in Toyota Grand Highlanders MY 2023 to the present.

---

[2] https://www.autoblog.com/news/2017-toyota-highlander-new-york-7890

44.    The Toyota Sienna was introduced in the United States in 1997. Toyota introduced the UA80 transmission in the model year 2017 with a refresh in the middle of its third generation. This eight-speed automatic transmission replaced the previous six-speed unit. This defect exists in Toyota Sienna's MY 2017 to 2020.

45.    The Toyota Avalon was introduced in the United States in 1995. The fifth-generation Avalon, the subject of this matter, utilized a UA80 eight-speed automatic transmission beginning in 2019. This defect exists in Toyota Avalon's MY 2019 to 2022.

46.    The Lexus ES350 was introduced in the United States in 2006. The seventh-generation ES350, the subject of this matter, utilized a UA80 eight-speed automatic transmission beginning in 2019. This defect exists in Lexus ES350's MY 2019 to the present.

47.    The Lexus ES250 was introduced in the United States in 1989, and reintroduced to the United States in 2021. The Lexus ES250 was equipped with the defective UA80 eight speed transmission upon its reintroduction in 2021. This defect exists in Lexus ES250's MY 2021 to the present.

48.    The Lexus RX350 was introduced in the United States in 2006. The fifth-generation RX350, the subject of this matter, used a defective UA80 eight-speed automatic transmission beginning in 2023. This defect exists in Lexus RX350's MY 2023 to the present.

49.    The Lexus NX250 was introduced in the United States in 2014. The second-generation NX250, the subject of this matter, used a defective UA80 automatic transmission beginning in 2022. This defect exists in Lexus NX250's MY 2022 to the present.

50.    The Lexus NX350 was introduced in the United States in 2014. The second-generation NX350, the subject of this matter, used a defective UA80 automatic transmission beginning in 2022. This defect exists in Lexus NX350's MY 2022 to the present.

51. The Lexus TX350 was introduced in the United States in 2023 with an automatic 8-speed transmission. This defect exists in Lexus TX350's MY 2024 to the present.

**B.**   **The UA80 Transmission Assembly and Defect**

52. A transmission assembly is the complete set of all components that make a vehicle's transmission system, including the gearbox, clutches, valve body, and torque converter. All automatic transmissions use automatic transmission fluid and hydraulic pressure to ensure smooth operation, minimize friction and to lubricate gears.

53. Because of the hydraulic pressure in an automatic transmission, transmission fluid must maintain precise viscosity to maintain lubrication of parts and adequately dissipate heat.

54. The defective transmission at issue in this Complaint, the UA80 transmission, has been in manufacture since 2016 and first began appearing in vehicles in 2017.

55. The UA80 transmission was jointly developed by the Toyota and Aisin Corporation, LTD, a designer and manufacturer of vehicle components.[3]

56. The direct-shift UA80 transmission was Toyota's attempt to develop a new transmission for better vehicle efficiency to reduce $CO_2$ emissions. According to Toyota documents, Toyota formulated and adopted the "Toyota New Global Architecture (TNGA) design philosophy to enhance its competitiveness by developing and manufacturing vehicles with substantially greater product appeal, lower costs and higher productivity."[4]

57. The below diagram depicts the UA80 transmission.

---

[3] https://global.toyota/pages/global_toyota/mobility/technology/toyota-technical-review/TTR_Vol64_E.pdf last visited December 9, 2025).
[4] *Id.*



58.    According to Toyota, "an 8-speed gear train was selected from the standpoints of controllability, mountability, and transaxle efficiency with the aim of improving fuel efficiency by increasing the number of gear speeds…." "The new 8-speed automatic transaxle was configured with the torque converter and gear train on the first axis, the counter gear on the second axis, and the differential gear on the third axis". . . "The oil pump is chain driven and located on a separate axis which helps to increase efficiency and shorten the overall length of the transaxle."[5]

59.    As compared to previously a developed six speed transmission used by Toyota, the UA80 was designed to be 8% more efficient and "6kg lighter and 5 mm shorter than the previous 6-speed automatic transaxle."[6] The design of the UA80 allowed it to be mounted similarly to the prior 6-speed without substantial modification of the subject vehicles. However, this design required a number of significant modifications over the design of the prior 6-speed transmission.

---

[5] https://global.toyota/pages/global_toyota/mobility/technology/toyota-technical-review/TTR_Vol64_E.pdf last visited December 9, 2025).
[6] *Id.*

60.     Defendants developed the new UA80 transmission by moving the location of the valve body from the bottom surface in the previous 6-speed automatic transaxle to the front, thereby lowering a vehicle's center of gravity. The gear train consists of a front planetary gear, Ravigneaux planetary gear, four clutches and two brakes. A diagram of this is shown below.



61.     Other changes that Defendants made included an enlarged gear spread, and adoption of new control technology which allowed the one-way clutch to be eliminated. This simplified the shift control, allowing the gear train structure to change by switching just one component element.

62.     While these changes theoretically allowed for a simplified transmission, in reality, they led to deep mechanical issues.

63.     Furthermore, the second defect, the Software Defect lies with the failure of the transmission control module, engine control module, and powertrain module. The software is defective because it prioritizes early upshifts and torque-converter clutch engagement to maximize fuel economy – with the caveat that this frequent cycling causes excessive stress on the transmission by overheating and degrading the transmission components and transmission fluid.

64.     Both defects are inherently dangerous as a faulty transmission can cause a vehicle to act in unintended ways, as a defective transmission may not be able to engage or stay in gear,

cause slipped gears, cause fluid leaks, cause delayed shifts, cause missed gear shifts, cause delayed engagement and harsh shifting, cause burning smells and unusual noises, as well as cause the vehicle to lose power.

65.     These defects can have disastrous effects, as a defective transmission can cause a vehicle to stop mid-operation.

66.     The Transmission Defect exists in the Class Vehicles and makes them unreliable and unsafe.

67.     The UA80 transmissions have been known to be an issue for several years, with several customer support program bulletins issued by Defendants. Despite knowing that the UA80 transmissions are defective, and possessing the knowledge that the Class Vehicles are unreliable and unsafe, Defendants continue to market and advertise that their vehicles and Transmission Assemblies are safe.

68.     Defendants have known since at least August 2016 that their UA80 transmissions are defective.[7] Despite knowing that this defect existed, Defendants have continued to market and sell their vehicles with defective transmissions.

69.     However, this issue has existed for several years, and has been raised in multiple technical support bulletins:

      a.  Tech Tip T-TT-0410 - Aug. 17, 2016[8]

      b.  T-SB-0187-17 - Feb. 20, 2017[9]

      c.  T-SB-0194-17 - Mar. 2, 2017[10]

---

[7] https://static.nhtsa.gov/odi/tsbs/2016/MC-10111620-9999.pdf last visited December 9, 2025).
[8] *Id.*
[9] https://static.nhtsa.gov/odi/tsbs/2017/MC-10131784-9999.pdf last visited December 9, 2025).
[10] https://static.nhtsa.gov/odi/tsbs/2017/MC-10131741-9999.pdf last visited December 9, 2025).

d.  T-SB-0330-17 – Dec. 11, 2017[11]

e.  T-SB-0001-18 – Jan. 8, 2018, later revised February 2, 2018[12]

f.  T-SB-0160-18 - Dec. 17, 2018, later revised May 11, 2021[13]

g.  Customer Support Program ZJC - Apr. 18, 2019[14]

h.  T-TT-0580-19 – Jan. 27, 2020[15]

i.  T-SB-0122-20 – Dec. 14, 2020, later revised May 26, 2021, and Jan. 22, 2021[16]

j.  T-SB-0008-21 - Feb. 9, 2021[17]

k.  L-SB-0003-21 - Feb. 9, 2021[18]

l.  T-SB-0087-23 - Nov. 3, 2023[19]

**C.    Complaints by Other Class Members**

70.    Plaintiff's experiences are by no means an isolated or outlying occurrence. Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same Transmission Defect within the Class Vehicles.[20]

71.    Class Vehicle owners have publicly complained to the United States government about the Transmission Defect in Class Vehicles since the vehicle has been released. The Office of Defects Investigation ("ODI") is an office within the National Highway Traffic Safety Administration ("NHTSA"). ODI conducts defect investigations and administers safety recalls to support the NHTSA's mission to improve safety on the Nation's highways.[21] All automobile

---

[11] https://static.nhtsa.gov/odi/tsbs/2017/MC-10140595-9999.pdf last visited December 9, 2025).
[12] https://static.nhtsa.gov/odi/tsbs/2018/MC-10129947-9999.pdf last visited December 9, 2025).
[13] https://static.nhtsa.gov/odi/tsbs/2021/MC-10198131-9999.pdf last visited December 9, 2025).
[14] https://static.nhtsa.gov/odi/tsbs/2019/MC-10159727-9999.pdf last visited December 9, 2025).
[15] https://static.nhtsa.gov/odi/tsbs/2020/MC-10171406-9999.pdf last visited December 9, 2025).
[16] https://static.nhtsa.gov/odi/tsbs/2021/MC-10198153-9999.pdf last visited December 9, 2025).
[17] https://static.nhtsa.gov/odi/tsbs/2021/MC-10188917-9999.pdf (last visited December 9, 2025).
[18] https://static.nhtsa.gov/odi/tsbs/2021/MC-10188916-9999.pdf (last visited December 9, 2025).
[19] https://static.nhtsa.gov/odi/tsbs/2023/MC-10247799-9999.pdf (last visited December 9, 2025).
[20] https://www.change.org/p/toyota-the-ua80f-e-transmission-defect/ (last visited December 9, 2025).
[21] *See* https://www.odi.nhtsa.dot.gov/recalls/recallprocess.cfm (last visited Mar. 21, 2022). Indeed, automobile

manufacturers routinely monitor and analyze NHTSA complaints because this information is used in determining if a recall should be issued. Thus, Defendants have knowledge of any and all NHTSA complaints.

72.    The following reflect just a small sampling of the many complaints submitted to ODI by owners of Class Vehicles. These publicly available complaints, filed as early as 2017, evidence Defendants' prior knowledge of the Defects, the negative experiences encountered by Class Members, and the financial burden the Defects place on them.

NHTSA ID Number: 1105422
Date of Incident: 12/13/2017

SUMMARY:

Driving approximately 72 mph when vehicle died causing a potentially very hazardous situation - check engine light came on, master warning light came on, see dealer for repair message Displayed. Was able to limp to side of road and had vehicle towed to dealership. After 2 days of diagnostic testing the engine control module (ecm) was replaced under warranty (less than 12,000 miles on. Vehicle). The vehicle is running, however, now notice a decrease in gas mileage and difference in transmission shifting since replacement"

NHTSA ID Number: 11670858
Date of Incident: 07/02/2025

SUMMARY:

The contact owns a 2020 Toyota Highlander. The contact stated while driving at an undisclosed speed and attempting to accelerate, there was abnormal whining sound coming from underneath the vehicle. No warning lights were illuminated. The vehicle was taken to the dealer, who diagnosed a failure with the transmission assembly. The vehicle was not repaired. After investigating the failure, the contact related the failure to Customer Support Program: POL 19-04. The manufacturer was notified of the failure, a case was opened, and the contact was referred to the NH.

NHTSA ID Number: 11652259
Date of Incident:  03/03/2025

SUMMARY:

---

manufacturers are required by law to monitor NHTSA complaints and report any potential safety defects to the United States government. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

Known issue with the transmission assembly that results in a whining noise and eventually hard shifting and transmission failure. Known issue acknowledged by Toyota across this model and date, but they seemingly are only addressing some vehicles - and not others - with said known issue.

NHTSA ID Number: 11515964
Date of Incident: 04/05/2023

SUMMARY:

2019 Highlander has whining noise when accelerating so we brought it into the dealership. They stated it needs a new transmission assembly - $11,741.41. This is unacceptable for a four year old vehicle. I have contacted Toyota directly, they stated there is nothing they can do for us because we are over the 60,000 warranty.

NHTSA ID Number: 11702304
Date of Incident: 09/01/2025

SUMMARY:

Road noise was very loud. I thought it was a bearing and I took it to the shop and found out that the 'transfer box' on the side of the transmission had to be replaced. I was told that not replacing it could lead to major transmission failure. This cost 6000. Mechanic said it's unusual. Upon reading the internet I'm learning that I'm not the only one this and similar problems.

NHTSA ID Number: 11700698
Date of Incident: 10/30/2025

SUMMARY:

Almost caused high speed accident merging onto toll road! The vehicle is experiencing a severe transmission slippage, shudder, and grinding noise, consistent with TSB-0008-21 (UA80 transmission failure). This defect causes hesitant acceleration and erratic shifting, creating a safety hazard when merging onto highways or crossing intersections. I am concerned the transmission will fail completely while driving, resulting in a sudden loss of motive power and increasing the risk of a crash. Toyota has covered this exact safety defect in 2017–2019 models (CSP ZJC) but has failed to recall the 2021 models despite identical symptoms. First reared it's head as slipping when putting vehicle in reverse, 25k ago. Was told by Toyota Certified mechanics it was an operator error. Morphed into larger issue.

NHTSA ID Number: 11700460
Date of Incident: 11/15/2025

SUMMARY:

Four days ago, engine started making a whining noise when accelerating, especially in lower gears. No warning signs. 2022 Highlander Platinum is 3 years old, 80K miles, out of warranty; no extended warranty purchased due to historical, stellar Toyota reliability. Toyota service department at Toyota dealership today said whining is due to a bearing issue within the

CLASS ACTION COMPLAINT                                                                      17

transmission (my personal mechanic inspected and said that is also likely) and cannot be repaired. Transmission could last another 10K-20K miles they said, before it becomes undrivable or just drops, causing a potential safety issue. Net, the entire transmission needs to be replaced to the tune of $9186. Just shocking.

NHTSA ID Number: 11700421
Date of Incident: 09/22/2021

SUMMARY:

To whom it may concern I hope I've chosen the proper avenue for my problem. I purchased and new 2021 Toyota Highlander. I chose Toyota for it reputation of high standards of dependability. However I took the vehicle in at 20,611 miles (9/22/2021) into the dealership for multiple transmission issues. When passing it would kick down into a lower gear and race the motor. There was also chunky shifting and a small whining noise. (service Ref #XXX). The service manager only wrote down the first symptom. Upon doing a computer diagnostic without driving the vehicle the service manager told me to just drive it more that it probably needed more breaking in. The downshifting and chunky shifting did go away for the most part, but the whining persistently got worse. Finally at 115,000 miles it got much worse and I took it back to the dealership. They informed me that the transmission needed replaced at over $9,000. I reached out to Toyota upon finding out there was a in company TSB alert for this very symptom (Case #XXX). Toyota informed me there was nothing they were willing to do since it was out of warranty even though I reported the problem with no resolution when it was in warranty. My wife and I are in our [XXX] and don't have cash like that. we don't feel we should be responsible for the repair, especially when the issue was report properly before the warranty expired. How can you help? Thank you for your attention. [XXX] [XXX] [XXX] INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)


NHTSA ID Number: 11699712
Incident Date: 11/16/2025

SUMMARY:

Transmission malfunction that left us on the highway with no power and in an unsafe situation. Not confirmed as of yet. At dealership tomorrow. No inspection completed by parties listed a [ ] sic

NHTSA ID Number: 11699558
Incident Date: 11/05/2025

SUMMARY:

Whining sound upon acceleration. Occasional hesitation when shifting gears or rough shifting when going from complete stop to accelerating. Dealership says need new transmission. Warranty company test drove and agreed with dealership findings. 60,000 miles

NHTSA ID Number: 11698714
Incident Date: 10/01/2025

Consumer Location ASHLAND, WI

SUMMARY:

About 4 weeks ago I started hearing a whining noise from my Highlander. Thinking it was a belt we replaced. Whining continued to get worse only on acceleration. We are at 88,000 miles and it is now at Toyota getting a new transmission. Is there not something that can be done about this? I have read thousands of articles that show the UA 80E/F transmissions that are in the 2021-2022 models are junk. Luckily we bought a Toyota VSA and it is covering it. What about after 100,000 miles. Whats to say after another 80,000 it won't go out again which will cost me the $10,000. When the dealers put new transmissions in these vehicles are they using the same parts for the UA 80 E/F or the upgrade parts that fixed the 2023? If we have a VSA it should extended a year past the 100,000 mile mark because of the issue or they should have to replace them completely to match the 2023 models.

NHTSA ID Number: 11302663
Incident Date: 01/13/2020

Summary:

29K ON THE CAR AND FOURTH TIME AT THE DEALERSHIP FOR TRANSMISSION PROBLEMS,  THIS TIME THEY REPLACED THE TRANSMISSION.

NHTSA ID Number: 11310982
Date of Incident: 02/23/2020

SUMMARY:

WHEN TRYING TO MERGE WITH TRAFFIC AT AN ONRAMP, THE VEHICLE WILL FREQUENTLY REFUSE TO DOWNSHIFT TO MATCH TRAFFIC SPEED WHEN DOING 35-50MPH. THIS HAS RESULTED IN SEVERAL CLOSE CALLS UNDER THESE CIRCUMSTANCES AND I NEVER KNOW WHEN THIS WILL HAPPEN. THIS FORCES A MANUAL DOWNSHIFT THAT CANNOT ALWAYS BE IN TIME. THIS SAME PROBLEM HAS BEEN REPORTED ON NUMEROUS FORUMS AND SOME HAVE REPORTED HAVING TO "TRICK" THE TRANSMISSION INTO DOWNSHIFTING

## CLASS ALLEGATIONS

73.    Pursuant to Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3). Plaintiff asserts common law

claims, as more fully alleged hereinafter, on behalf of the following Nationwide Class.

**Nationwide Class**: All persons or entities in United States who are current or former owners and/or lessees of a Class Vehicle (the "Nationwide Class").

Members of the Nationwide Class are referred to herein collectively as "Class Members" or

"Class."

74.    In the alternative to the Nationwide Class and pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiff seeks to represent the following state class:

> **Nevada Class**: All persons or entities in Nevada who are current or former owners and/or lessees of a Class Vehicle (the "Nevada Class").

75.    Together, the Nationwide Class and the Nevada Class are referred to herein collectively as the Class.  Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change or expand the Class definitions.

76.    **Numerosity**: Upon information and belief, the Class are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process, Plaintiff believes that hundreds of thousands of Class Vehicles have been sold and/or leased throughout the United States and tens of thousands have been sold and/or leased within the state of Nevada.

77.    **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

    a.  whether the Transmission Assemblies in the Class Vehicles are predisposed to premature failure;

    b.  whether the Transmission Assemblies in the Class Vehicles contain a manufacturing defect;

c.  whether the defective PCV system is common to all or some of the Class Vehicles;

d.  if so, whether the Transmission Defect causes Transmission Assemblies to fail in the Class Vehicles;

e.  whether Defendants knowingly failed to disclose the existence and cause of the Transmission Defect in Class Vehicles;

f.  whether, as a result of Defendants' omissions and/or misrepresentations of material facts related to the Transmission Defect, Plaintiff and members of the Class have suffered ascertainable loss of monies and/or property and/or value;

g.  whether, as a result of Defendants' omissions and/or misrepresentations of material facts related to the Transmission Defect, Plaintiff and members of the Class have suffered an increased cost of maintenance related to the Class Vehicles; and

h.  whether Plaintiff and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

78.    **Typicality**: Plaintiff's claims are typical of the claims of the Class since Plaintiff purchased a Class Vehicle with Transmission Defects, as did each member of the Class. Furthermore, Plaintiff and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

79.    **Adequacy**: Plaintiff is an adequate representatives because his interests do not conflict with the interests of the Class that he seeks to represent, he has retained counsel competent and highly experienced in complex class action litigation, and he intends to prosecute this action

vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

80.    **Superiority:** A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class to individually and effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Toyota's vehicle identification numbers (VINs), warranty claims, registration records, and the database of complaints.

81.    **Injunctive Relief**: Pursuant to Fed. R. Civ. P. 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief, corresponding declaratory relief, or final equitable relief with respect to the class as a whole.

**COUNT I**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nationwide Class and, alternatively, the Nevada Class)**

82.    Plaintiff, on behalf of himself and the Class, re-alleges and incorporates the above allegations by reference.

83.    Plaintiff brings this claim on behalf of himself and the Nationwide Class or, alternatively, on behalf of the Nevada Class, against Defendants.

84.    Defendants expressly warranted that the Class Vehicles and Transmission Assembly were of high quality and, at a minimum, would actually work properly. Defendants also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge that occurred during the New Vehicle Limited Warranty, Powertrain Limited Warranty and certified pre-owned ("CPO") warranty periods.

85.    Defendants breached these warranties by selling to Plaintiffs and Class members the Class Vehicles with known defects, the Transmission Defect, which are not of high quality, and which fail prematurely and/or fail to function properly.

86.    As a result of the Defendants' actions, Plaintiffs and Class members have suffered economic damages including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

87.    Defendants' attempt to disclaim or limit these express warranties vis- à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold a defective product without informing consumers about the manufacturing and/or material defect. Furthermore, Defendants continue to charge Class members for repairing the defective Transmission Assemblies – if it repairs them at all -- when in fact such repairs are actually necessitated because of Defendants' defective product.

88.     The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Class. Among other things, Plaintiff and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Class members, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

89.     Plaintiff and Class members have complied with all obligations under the warranties, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

**<u>COUNT II</u>**
**BREACH OF IMPLIED WARRANTY**
**(On Behalf of the Nationwide Class and, alternatively, the Nevada Class)**

90.     Plaintiff, on behalf of himself and the Class, re-alleges and incorporates the above allegations by reference.

91.     Plaintiff brings this claim on behalf of himself and the Nationwide Class or, alternatively, on behalf of the Nevada Class, against Defendants.

92.     Toyota is and was at all relevant times a merchant with respect to motor vehicles and a seller of motor vehicles.

93.     With respect to leases, Toyota is and was at all relevant times a lessor of motor vehicles.

94.     The Class Vehicles and the Transmission Assemblies are and were at all relevant times goods.

95.     A warranty that the Class Vehicles and Transmission Assemblies were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law.

96.     Defendants impliedly warranted that the Class Vehicles, including the Transmission Assemblies, were of merchantable quality and fit for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Toyota were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use—providing safe and reliable transportation— while the Class Vehicles were being operated.

97.     Defendants breached the implied warranty of merchantability in that the defective Class Vehicles were not in merchantable condition when they were sold to Plaintiffs and Class members and said vehicles were and are unfit for the ordinary purposes for which such vehicle is used because they pose a serious safety risk to the occupants and are an unreliable means of transportation.

98.     As a direct and proximate result of breaches of the implied warranty of merchantability, Plaintiffs and the Class members have suffered damages, including but not limited to incidental and consequential damages

99.     Defendants are and were at all relevant times, merchants with respect to the Class Vehicles and manufactured, distributed, marketed, warranted and sold and/or leased the Class Vehicles.

100.    Plaintiff and Class Members purchased or leased the Class Vehicles and Transmission Assemblies manufactured and sold by Defendants in consumer transactions.

101.    A warranty that the Class Vehicles were in merchantable condition is implied by law.

102.    These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that there are defects in the Class Vehicles' Transmission Assemblies, which are not of high quality, and which fail prematurely and/or fail to function properly.

103.    Defendants knew or should have known before the time of sale to Plaintiff and the other class members, or earlier, that the Vehicles were produced with defective Transmission Assemblies that rendered them at all times thereafter unmerchantable, unfit for ordinary use, unsafe, and a threat to safety.

104.    Defendants were provided notice of these issues by numerous informal and formal complaints filed against them, including the instant complaint, and by numerous individual letters and communications sent by Plaintiff and other Class members.

105.    Despite Plaintiff's and Class Members' normal, ordinary, and intended use, maintenance, and upkeep, the Class Vehicles were subject to the Transmission Defects

106.    As a direct and proximate result of Defendant's breach of the warranties of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

107.    In their capacity as suppliers and/or warrantors, and by the conduct described herein, any attempt by Defendants to disclaim or otherwise limit express warranties in a manner that would exclude or limit coverage for the Transmission Defects that was present at the time of sale and/or lease, which Defendants knew or should have known about prior to offering the

Vehicles for sale or lease, and which Defendants did not disclose and did not remedy prior to (or after) sale or lease, is unconscionable, and Defendants should be estopped from pursuing such defenses.

108.    Defendants' warranty disclaimers, exclusions, and limitations, to the extent that they may be argued to apply, were, at the time of sale, and continue to be, unconscionable and unenforceable to disclaim liability for a known, latent defect. Defendants knew or should have known when they first made these warranties and their limitations that the Transmission Defect existed, and the warranties might expire before a reasonable consumer would notice or observe the Transmission Defect. Defendants also failed to take necessary actions to adequately disclose or cure the Transmission Defect after the existence of the Transmission Defect came to the public's attention and sat on its reasonable opportunity to cure or remedy the Transmission Defect, its breaches of warranty, and consumers' losses. Under these circumstances, it would be futile to enforce any informal resolution procedures or give Defendants any more time to cure the Transmission Defect or cure its breaches of warranty.

109.    As such, Defendants should be estopped from disclaiming liability for their actions.

110.    Privity of contract is not required for consumer implied warranty claims under the relevant laws. However, Plaintiffs and Class members had sufficient direct dealings with Defendants and their agents (dealers) to establish privity of contract. Defendants, on the one hand, and Plaintiff and Class members, on the other hand, are in privity because of Toyota's New-Vehicle Limited Warranty, which Defendants extend to Plaintiff and Class members.

111.    Privity is also not required in this case because Plaintiff and Class members are intended third-party beneficiaries of contracts between Defendants and their dealers (*i.e.*, its agents); specifically, they are the intended beneficiaries of Defendants' implied warranties. The

dealers were not intended to be the ultimate consumers of the Vehicles; the warranty agreements were designed for, and intended to benefit, only the ultimate consumers—such as Plaintiff and Class members. Privity is also not required because Plaintiff's and Class members' Vehicles are inherently dangerous due to the aforementioned defects and nonconformities.

112.    As a result of Defendants' breaches of the implied warranty of merchantability, Plaintiff and Class members suffered and will suffer out-of-pocket losses related to obtaining replacements of defective Transmission Assemblies, damage to the Vehicles or areas surrounding the Vehicle caused by the Transmission Defects, diminution in value of the Vehicles, costs associated with arranging and obtaining alternative means of transportation, and any other incidental and consequential damages recoverable under the law.

<u>**COUNT III**</u>
**COMMON LAW FRAUD**
**(On Behalf of the Nationwide Class and, alternatively, the Nevada Class)**

113.    Plaintiff, on behalf of himself and the Class, re-alleges and incorporates the above allegations by reference.

114.    Plaintiff brings this claim on behalf of himself and the Nationwide Class or, alternatively, on behalf of the Nevada Class, against Defendants.

115.    Defendants actively, intentionally, and knowingly concealed, suppressed, and/or omitted material facts including the existence of the Transmission Defect and the standard, quality, or grade of the Vehicles and the fact that the Vehicles contain a Transmission Defect and corresponding safety risk, with the intent that Plaintiffs and Class members rely on Defendants' omissions. As a direct result of Defendants' fraudulent conduct, as alleged herein, Plaintiffs and Class members have suffered actual damages.

116.    Defendants made material omissions concerning a presently existing or past fact. For example, Defendants did not fully and truthfully disclose to its customers the defective nature of the Class Vehicles' Transmission Assemblies, which was not readily discoverable until after the Vehicles were purchased. As a result, Plaintiff and the other Class members were fraudulently induced to lease and/or purchase the Class Vehicles with the said Transmission Defect and all of the resultant problems.

117.    Defendants knew or should have known at the time of sale or lease and thereafter that the Vehicles contained the Transmission Defect, omitted material information about the safety of the Vehicles, and actively concealed the Transmission Defect.

118.    Defendants possessed superior and exclusive knowledge regarding the Transmission Defect, and therefore had a duty to disclose any information relating to the safety and functionality of key safety features in the Vehicles.

119.    Plaintiff and Class members reasonably relied on these omissions, and suffered damages as a result.

## COUNT IV
## UNJUST ENRICHMENT
### (On Behalf of the Nationwide Class and, alternatively, the Nevada Class)

120.    Plaintiff, on behalf of himself and the Class, re-alleges and incorporates the above allegations by reference.

121.    Plaintiff brings this claim on behalf of himself and the Nationwide Class or, alternatively, on behalf of the Nevada Class, against Defendants.

122.    Plaintiff and members of the Class conferred a benefit on Defendants.

123.    Defendants had knowledge that this benefit was conferred upon them.

124.    Defendants have been and continue to be unjustly enriched at the expense of Plaintiff, and their retention of this benefit under the circumstances would be inequitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and the proposed Class, prays for relief and judgment against Defendants as follows:

A.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Classes as defined above;

B.    appoint Plaintiff as the representative of the Class and his counsel as Class counsel;

C.    award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class members are entitled;

D.    award pre-judgment and post-judgment interest on such monetary relief;

E.    grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class members with appropriate curative notice regarding the existence and cause of the manufacturing defect;

F.    award reasonable attorney's fees and costs; and

G.    grant such further relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demand a trial by jury on all triable issues.

DATED:  December 12, 2025                Respectfully submitted,

                                        **STECKLER WAYNE & LOVE, PLLC**

                                        By: */s/ Bruce W. Steckler*
                                        Bruce W. Steckler
                                        bruce@steckelerlaw.com
                                        Austin P. Smith
                                        austin@stecklerlaw.com
                                        12720 Hillcrest Road
                                        Dallas, Texas 75230
                                        Telephone: (972) 387-4040
                                        Fax: (972) 387-4041

                                        **BARRACK, RODOS & BACINE**
                                        Stephen R. Basser*
                                        sbasser@barrack.com
                                        Samuel M. Ward*
                                        sward@barrack.com
                                        One America Plaza
                                        600 West Broadway, Suite 900
                                        San Diego, CA 92101
                                        Telephone: (619) 230-0800
                                        Fax: (619) 230-1874

                                        * Application for admission *Pro Hac Vice*
                                        forthcoming